OPINION
{¶ 1} Defendant-appellant Christopher Porter appeals his convictions and sentences entered by the Stark County Court of Common Pleas on three counts of felonious assault, in violation of R.C.2903.11(A)(2), each with an attendant firearm specification. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On August 23, 2002, the Stark County Grand Jury indicted appellant on three counts of felonious assault. Each count included a firearm specification. Appellant entered pleas of not guilty to all the charges at his arraignment on August 30, 2002. Appellant filed a Notice of Alibi pursuant to Crim.R. 12.1 on October 29, 2002. The matter proceeded to jury trial on November 25, 2002.
 {¶ 3} The following evidence was adduced at trial. Sharylann Staples testified her nephew, Marcellus Hudson, and his best friend, Kyrk Freeman, were at her apartment on the evening of March 2, 2002. Between 11:00 p.m. on March 2, 2002, and 12:00 a.m. on March 3, 2002, Staples was driving the boys in her fiancé's black cadillac to Freeman's house in order for him to pick up clothes to wear to church the following day. Staples, who was driving cautiously for fear of wrecking the car, turned onto Young Avenue from Mahoning Road. Freeman and Hudson rolled down the car windows and began to talk to some girls who were standing on the corner. Staples heard Hudson yell, "He has a gun, get down." Staples looked back and continued to drive. The boys dropped to the floor of the car. Staples heard shots being taken at the car. Three bullets struck the rear of the vehicle. Staples drove to Hudson's grandmother's house. The police were notified. When officers arrived, they interviewed Staples, Hudson, and Freeman, and inspected the cadillac. Staples accompanied the officers to the scene of the shooting where she observed them collecting bullet shells.
 {¶ 4} Kyrk Freeman, who was fourteen years old at the time of trial, testified he was traveling as a backseat passenger in Staples' vehicle between 11:15 and 11:30 p.m. on March 2, 2002. Hudson was in the front passenger seat. Freeman recalled seeing some people he and Hudson knew standing on a corner near Young Avenue and Lippert Street. As they spoke to the group, they observed a man with a yellow Dodgers jacket come from around the corner, running towards Staples' vehicle. The man stopped, reached inside his coat, and pulled out a gun. Freeman estimated the man was approximately twenty feet from the car. Although he did not get a good look at the man, Freeman noted he had an afro and was dark skinned. Freeman acknowledged he did not see the individual fire the gun, but only heard the shots fired. At trial, Freeman identified appellant was the individual who fired the shots.
 {¶ 5} Marsellus Hudson, who was fifteen years old at the time of trial, testified he was traveling in the front passenger seat of his uncle's cadillac which was being driven by Staples, at approximately 11:15 p.m. on March 2, 2002. Hudson testified he observed of group of people standing on the corner of Young Avenue and Lippert Street. Hudson remembered Staples had slowed the vehicle to a complete stop because the vehicle in front of her was driving slowly. As Hudson had his head hanging out the window, he observed appellant who was approximately six feet behind the vehicle, brandishing a gun. Hudson yelled a warning about the gun and dropped to the floor of the car. When Staples, Hudson, and Freeman arrived at Hudson's grandmother's house, Hudson related the incident to his grandmother, who called the police. Hudson noted appellant had lived across the street from his family a number of years earlier.
 {¶ 6} D'Marte Williams, who was fifteen years old at the time of trial, testified she was walking in the area of the intersection of Young Avenue and Lippert Street after leaving a party during the late evening of March 2, 2002. Williams stated she observed appellant and others pull up along the intersection. Williams and her friends were speaking with appellant, who remained inside the vehicle in which he was traveling. During that time, Staples pulled up to the intersection. Williams' cousin spoke with Hudson and Freeman. A short time later, appellant exited his vehicle and started shooting at Staples' vehicle. Williams heard four shots. Later that evening, Williams saw appellant at the Ellisdale apartments, where her grandmother lives. Appellant did not discuss the shooting, but stated if anybody said anything they were going to have to come see him. Williams identified appellant as the shooter from a photographic lineup.
 {¶ 7} Jawanna Leathers, who was seventeen years old at the time of the trial, testified she, Williams and a couple of other girls were near the intersection of Young Avenue and Lippert Street at approximately 11:30 p.m. on March 2, 2002. While at the intersection, Leathers' brother pulled up in his vehicle, and she began to speak with him. She recalled a black vehicle pulled up behind her brother's car. She also noticed a car pull up along the side of a building on Young Avenue. Thereafter, Leathers observed appellant nearby, brandishing a gun. Leathers encountered appellant at the Ellisdale apartments later that evening. She heard appellant comment "If I hear anything I am going to shoot you all" or something to that effect. Leathers identified appellant as the shooter during a photographic lineup.
 {¶ 8} After Leathers' testimony, Juror No. 40 advised the trial court's bailiff she recognized the witness. The trial court inquired of Juror No. 40, asking "Is there any reason you believe that would cause you any concern in listening to the case and being fair and impartial?" Juror No. 40 replied, "Well they know where I live. And there is a guy, a black guy sitting out there in a seat and I've seen him out in the hall. He is dark skinned, some white or discoloration on his face." Tr., Vol. I at 205-210. The trial court excused Juror No. 40 and replaced her with an alternate. Appellant objected.
 {¶ 9} Officers John Bosley and James Daniels of the Canton Police Department testified they were on routine patrol on the 5:00 p.m. to 3:30 a.m. shift on March 2, 2002. They were dispatched to 817 Correll Avenue at approximately 11:45 p.m. in response to a call about a shooting of a vehicle. When they arrived at the residence, the officers spoke with Staples, Freeman and Hudson. They photographed the vehicle, and returned to the area of the shooting with Staples. The officers observed several spent shell casings in the road.
 {¶ 10} Upon conclusion of Daniels' testimony, the State rested its case. Appellant made a Crim.R. 29 motion for acquittal, which the trial court overruled. Appellant presented four alibi witnesses on his behalf. The witnesses placed appellant with them in Cleveland on the night of the shooting. The witnesses also testified appellant had been shot in December, 2001, and, as a result, walked with difficulty.
 {¶ 11} After hearing all the evidence and deliberations, the jury found appellant guilty of all three counts and the specifications. The trial court immediately sentenced appellant to six years on each felonious assault count. The trial court ordered the sentences be served concurrently with each other. The trial court further ordered the firearm specifications relative to counts two and three be merged with the firearm specification for count one, and imposed one three year mandatory sentence. The trial court further ordered the felonious assault sentences be served consecutive and subsequent to the mandatory firearm specification sentence.
 {¶ 12} It is from these convictions and sentences appellant appeals, raising the following assignments of error:
 {¶ 13} "I. THE JURY VERDICT FINDING DEFENDANT-APPELLANT GUILTY OF FELONIOUS ASSAULT (3 CTS.) WITH FIREARM SPECIFICATION TO EACH COUNT WAS NOT SUPPORTED BY THE EVIDENCE; IN THE ALTERNATIVE, THE JURY VERDICT FINDING DEFENDANT-APPELLANT GUILTY OF FELONIOUS ASSAULT (3 CTS.) WITH FIREARM SPECIFICATION TO EACH COUNT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 14} "II. THE TRIAL COURT ERRED IN PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT EXCUSED JUROR NO. 40 AND REPLACED HER WITH THE ALTERNATIVE JUROR.
 I {¶ 15} In his first assignment of error, appellant raises a sufficiency of the evidence claim or, in the alternative, a manifest weight of the evidence claim. Specifically, appellant argues there was no physical evidence which placed him at the scene or identified him as the perpetrator, but rather the only evidence presented by the State was that of six witnesses whose testimony lacked credibility. Appellant submits, in contrast, he presented four alibi witnesses who placed him in Cleveland at the time of the offense.
 {¶ 16} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: AAn appellate court=s function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant=s guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus.
 {¶ 17} When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant=s convictions were based upon insufficient evidence.
 {¶ 18} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine Awhether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.
 {¶ 19} The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N.E.2d 541 citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1, 227 N.E.2d 212.
 {¶ 20} As set forth supra in the Statement of the Case and Facts, four of the State's witnesses made in-court identifications of appellant as the shooter. Additionally, Williams and Leathers testified they observed appellant at the scene of the shooting, and identified him as the shooter from a photographic lineup shortly after the offense occurred. The same witnesses testified they saw appellant later that evening where he threatened to harm anyone who discussed the shooting. On the other hand, appellant's alibi witnesses, who were all related to him, testified appellant was with them at an Applebee's Restaurant in Cleveland on the evening of the shooting, attending a birthday party.
 {¶ 21} Although appellant presented contrary testimony, the jury was free to accept of reject any or all of the witnesses' testimony and assess the witnesses' credibility. We find there was sufficient, competent evidence to place appellant at the scene of the offense and to establish appellant as the shooter. Based upon the foregoing, we find appellant's convictions were not against the manifest weight or sufficiency of the evidence.
 {¶ 22} Appellant's first assignment of error is overruled.
 II {¶ 23} In his second assignment of error, appellant contends the trial court erred in excusing Juror No. 40 and seating an alternate juror in her place.
 {¶ 24} Juror No. 40 approached the trial court's bailiff following the conclusion of Jawanna Leather's testimony. The trial court excused the jury and asked Juror No. 40 to remain in the courtroom. The following dialogue occurred:
 {¶ 25} "THE COURT: Juror No. 40, the bailiff just indicated to me that you approached him and indicated to him that when a witness came in to testify that you recognized the witness; is that correct? This witness was who, do you recall?
 {¶ 26} "JUROR NO. 40: The last that was sitting up there.
 {¶ 27} "THE COURT: The last witness was Jawanna Leathers. * * *
 {¶ 28} "THE COURT: And you didn't recognize the name this morning, but what you are saying is as I indicated sometimes when you have a face to go with the name, you recognize them at that time. That's what you are saying happened?
 {¶ 29} "JUROR NO. 40: Yes. * * *
 {¶ 30} "THE COURT: * * * do you know her other than by sight?
 {¶ 31} "JUROR NO. 40: No.
 {¶ 32} "THE COURT: As it relates to her testimony, and your knowledge of her, is there any reason you believe that would cause you any concern in listening to the case and being fair and impartial?
 {¶ 33} "JUROR NO. 40: Well, they know were I live. And there is a guy, a black guy sitting out there in the seat and I seen him out in the hall. He is dark skinned, some white discoloration on his face.
 {¶ 34} "THE COURT: What you are saying to the Court is that you prefer to be excused at this time?
 {¶ 35} "JUROR NO. 40: If you can assure me they don't know where I live. I have two kids and I am by myself. If I can be sure nothing is going to happen. * * *
 {¶ 36} "I know how the young kids are. I don't want to be a part of it. If I have to fight back I will fight back. I don't want to be involved in none of this if something is going to happen to me and my kids. * * *
 {¶ 37} "THE COURT: Well, from the Court's perspective, based on what the Court has heard, that we have a juror who this morning indicated she did not recognize any of the names. The Court instructed that if, in fact, a witness came in, that they recognized the face once they had the face to go with the name, they should bring that matter to the attention of the bailiff.
 {¶ 38} "This juror did follow that instruction, has indicated that she does know of Jawanna Leathers, does not know her personally, but knows the area where she was, has seen her on the street.
 {¶ 39} "More importantly, she indicated that she recognized a person sitting in the galley as being from the area where she has resided.
 {¶ 40} "She has expressed a concern with regard to living in that neighborhood, and based on those observations, this Court is going to excuse her for cause.
 {¶ 41} "The Court is going to substitute the alternate. The possibility of whether it's right or wrong, perceived or not perceived, it's in her mind and that could impact her ability to be fair and impartial to both the Defendant and to the State of Ohio. And the Court is going to excuse her for cause. The alternate will step in as a regular juror."
 {¶ 42} Tr., Vol. I at 203-205, 208-209.
 {¶ 43} Appellant objected. When the jury returned to the courtroom, the trial court instructed them not to draw any inferences from the substitution of an alternate juror for Juror No. 40. We find the trial court did not abuse its discretion in removing Juror No. 40 and replacing her with an alternate juror given the concerns expressed by Juror No. 40 and based upon the trial court's findings Juror No. 40's ability to be fair and impartial might be compromised.
 {¶ 44} Appellant's second assignment of error is overruled.
 {¶ 45} The convictions and sentences entered by the Stark County Court of Common Pleas are affirmed.
By: Hoffman, P.J., Farmer, J., and Boggins, J. concur.